THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* PAUL MARGIOTTA, Appellant.

Argued October 19, 1943.; decided January 13, 1944.

*J. Napoli, Ralph J. Barra* and *Caesar B. F. Barra* for appellant. The motions to advise the jury to acquit defendant should have been granted. The evidence was insufficient as a matter of law to warrant the submission of the case to the jury. (*People* v. *Bearden,* 290 N. Y. 478; *People* v. *Orr,* 270 N. Y. 193; *People* v. *Mantin,* 184 App. Div. 767; *People* v. *Woltering,* 275 N. Y. 51; *People* v. *Albero,* 223 App. Div. 442; *People* v. *D'Anna,* 243 App. Div. 259; *People* v. *De Martini,* 218 N. Y. 561; *People* v. *Galbo,* 218 N. Y. 283; *People* v. *Giordano,* 213 N. Y. 575; *People* v. *Razezicz,* 206 N. Y. 249; *People* v. *Mangan,* 237 App. Div. 289, 262 N. Y. 508; *People* v. *Suffern,* 267 N. Y. 115; *Matter of Case,* 214 N. Y. 199; *People* v. *Ledwon,* 153 N. Y. 10.)

*Thomas Cradock Hughes, Acting District Attorney (Edward H. Levine* of counsel), for respondent. I. The evidence adduced against appellant was sufficient to justify its submission to the jury as no court could have directed an acquittal. (*People* v. *Ledwon*, 153 N. Y. 10; *People* v. *Gluck*, 188 N. Y. 167; *Knickerbocker* v. *People*, 43 N. Y. 177; *Stover* v. *People*, 56 N. Y. 315; *Goldstein* v. *People*, 82 N. Y. 231; *People* v. *Jackson*, 182 N. Y. 66; *Wilson* v. *United States*, 162 U. S. 613; *People* v. *Place*, 157 N. Y. 584; *People* v. *Galbo*, 218 N. Y. 283; *People* v. *Suffern*, 267 N. Y. 115; *People* v. *Lewis*, 275 N. Y. 33; *People* v. *Woltering*, 275 N. Y. 51; *People* v. *Harris*, 136 N. Y. 423; *People* v. *Deitsch*, 237 N. Y. 300; *People* v. *Hughson*, 154 N. Y. 153; *People* v. *Trombino*, 238 App. Div. 61, 262 N. Y. 689.) II. The appellant's guilt was established beyond a reasonable doubt.

LEHMAN, Ch. J. The defendant was convicted of attempted robbery in the first degree. The indictment charges that on or about May 3, 1942, he unlawfully attempted to take one hundred and twenty dollars in currency and a diamond ring '' from the person of Peter C. LaBella, against his will, by means of force and violence and fear of immediate injury to his person, the above named defendant being armed at the time with a dangerous weapon, to wit a revolver.'' The evidence establishes that some man did attempt to rob Peter C. LaBella, but no witness identified the defendant as the man who made the attempt, or testified that he saw the defendant at the place where the attempt was made. The question presented upon this appeal is whether alleged admissions of the defendant and circumstantial evidence produced by the People have probative force sufficient to sustain the finding of the jury that the defendant was a guilty participant in the crime.

LaBella and his daughter Pauline were the only eye-witnesses of the attempted crime who testified at the defendant's trial. Their testimony establishes that on Sunday evening, May 3rd, LaBella, an undertaker, received a telephone call to go to an address in another part of Brooklyn, where, it was said, some person had died. In response to this call LaBella started off about 10:45 P. M., in his automobile which had been parked in front of his home. A person presumably the stranger who had

been standing for some time at the corner opposite the house and who had apparently sought to conceal his face, jumped on the running board of the automobile, pointed a gun at LaBella and commanded him to stop. Instead of stopping, LaBella so manipulated the automobile that the man with the gun lost his balance and jumped off the running board. The man again mounted the running board, but again LaBella drove the car with such sudden stops and jerks that the man was forced to jump off. The man then ran away but not in the direction in which the car was proceeding. LaBella carried a revolver, and fired six shots at the fleeing man. The man fell down. When LaBella was firing he noticed an automobile standing about sixty feet away, and the would-be robber was running towards the car. LaBella started to turn his car in order to get to the man who had fallen. By the time the turn was complete both the man and the standing automobile had disappeared.

Both LaBella and his daughter Pauline testified that they could not identify the defendant as the man who had been standing at the corner and who jumped on the running board of the car. Pauline LaBella, when asked " Do you see him in this courtroom? " answered " No;" and when the same question was put in other form: " You do not see him in this courtroom? " again answered " No." LaBella when asked: " You could not say that he was not the man? " answered " I could not say yes or no "; and then in answer to the question " Can you tell us whether he was as tall as this defendant? " answered: " He is not the one."

The evidence relied upon by the People to sustain the finding that the defendant is guilty of the attempted robbery, though the eye-witnesses testified that he is not the man who, in their view, made the attempt, may be briefly summarized as follows: The police, informed of the attempt by LaBella, began a search for the guilty man. A few days after the crime the defendant was taken to the police station and compelled to strip, but the police found no trace upon his person of any wound from a pistol shot. He was again taken to the police station two days later and again told to strip. Then a detective noticed a small bullet wound in the calf of the defendant's left leg. He was questioned at the station house by the detective and then by an assistant district attorney. He denied all knowledge of the attempted

robbery, but it is said that by his answers to the questions put to him he involuntarily revealed his guilt. Otherwise concededly there is no proof of such guilt.

We quote verbatim the testimony of the detective concerning the questioning of the defendant when the detective discovered the wound at the station house one week after the attempted robbery: " A. I said, ' Did you hold up LaBella on Cropsey Avenue last Sunday? ' He said ' No.' I said, ' Did you have the bullet taken out? ' He said, ' No.' He said, ' The bullet is still in there.' I said, ' Did you go to the hospital? ' He said, ' No '. I said ' Why? ' He said, ' He was afraid.' I asked him did he go to a doctor. He said ' No.' I said, ' Why? ' He said, ' I will be afraid to go.' I said, ' Tell me how you got that bullet in your leg? ' And he said he started riding in his brother's car about 9 o'clock that night and had his wife and was riding around the vicinity of Coney Island, Belt Parkway and Cropsey Avenue, and he stopped in that neighborhood for gas, and as he is driving along Cropsey Avenue he felt a sting in his left leg. He continued driving and he left his wife home and proceeded to his home in 79th Street where he dressed the wound and then went down to repair the car."

Questions put to him later on the same day by the Assistant District Attorney and the defendant's answers to these questions were taken down by a stenographer. There he said that he had called for his wife on Sunday evening, May 3rd, driving a car owned by his brother; that he was with her the entire evening, and that he told her that he had been shot while they were in the neighborhood where LaBella lived and where he shot some man attempting to rob him.

If the defendant's answer to the questions which were put to him on May 10th are true, then of course he had no part in the attempted robbery, and was accidentally wounded at a different time and place, though on the same evening, and perhaps in the same general neighborhood. The jury could reasonably refuse to credit the defendant's claim that he received the wound while driving his wife on innocent pleasure bent. The wife testified as a witness for the People that though she had been driving with the defendant on the afternoon of May 3rd, she returned home in the early evening, long before the time claimed by the defendant, and that she heard no shot

while driving with the defendant and that he did not tell her at that time or later that he had been shot. Her testimony also showed that their relations had not been entirely idyllic, and that they were not living together. That testimony, with other evidence produced by the People, is sufficient to support an inference that the exculpatory parts of the defendant's story are false. We must decide whether, after rejecting the exculpatory portion of the answers given by the defendant, there inheres in what remains probative force sufficient to establish guilt beyond a reasonable doubt.

The only admissions made by the defendant are that he received his wound on the evening of the attempted hold-up, and that he had been at the place where the shooting took place at or about the time LaBella fired shots at a would-be robber. Fragments of his story and other evidence permit the inference that in order to avoid inquiry by the police he tried to conceal the fact that he had been wounded by a pistol shot on the evening of the attempted robbery. Fear of inquiry by the police might be due to consciousness of guilt, but it might also be due to the natural reluctance of a man with a criminal record. The admissions, viewed in the light most unfavorable to the defendant, might justify a suspicion of guilt, but constitute no substantial proof. Certainly they are not sufficient to overcome the testimony of the two eye-witnesses that the defendant was not the man who attempted to rob LaBella.

The judgments should be reversed and a new trial ordered.

LOUGHRAN, RIPPEY, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Judgments reversed, etc.